# Tate *v.* Philadelphia Rapid Transit Co., Appellant.

*Negligence—Street railways—Infants—Charge.*

In an action of trespass to recover damages for personal injuries sustained by plaintiff, an infant of seven years, in consequence of being run over by a trolley car at the intersection of two city streets, there was evidence that plaintiff, after leaving school in company with other children, was crossing the street upon which defendant's tracks lay; that a trolley car which had stopped on the north side of the intersecting street started after the children began to cross and struck plaintiff on the south side of the intersecting street; that the motorman was not looking straight ahead but toward the side, immediately before the accident occurred, although he could have seen numbers of children crossing the street when the car started at the north side, had he been looking at that time. *Held,* the case was for the jury, and a verdict and judgment for plaintiff was sustained.

Argued Jan. 6, 1914. Appeal, No. 109, Jan. T., 1913, by defendant, from judgment of C. P. No. 5, Philadelphia Co., Dec. T., 1911, No. 2658, on verdict for plaintiff in case of Maud Tate, by her next friend Samuel Brandon, v. Philadelphia Rapid Transit Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before ORMEROD, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

The court in part charged as follows:

"The first question which you will have to determine is whether this accident did occur by reason of the negligence of the motorman of the car. There is no proof

as to just exactly how the accident did occur. No one seems to have noticed the position of the plaintiff until she was found under the car or alongside the car with her leg in the condition described by the witnesses. Ordinarily in cases of this kind, the court would require proof on the part of the plaintiff as to just how the accident occurred, but the plaintiff in this case was a child of only about seven years old at the time the accident occurred, and that makes a difference in the proof required upon the part of the plaintiff."

Verdict for plaintiff for $5,000, and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were (1) refusal to direct verdict for defendant; (2) refusing to enter judgment for defendant n. o. v., and (3) charge of the court as above.

*Charles Biddle,* with him *Howard H. Yocum,* for appellant.

*Thomas Ridgway,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, February 9, 1914:

This is an action to recover damages for injuries sustained by plaintiff, Maud Tate, a colored child seven years of age, who was struck by defendant's car at the intersection of Fifteenth and Tioga streets in the City of Philadelphia. The case was submitted to the jury and a verdict having been returned for the plaintiff and judgment entered thereon, the defendant company has taken this appeal.

The statement avers that the car "knocked down and ran over plaintiff, through the negligence of defendant's employee in charge of said car, who so carelessly and negligently operated said car as not to look out for the plaintiff and stop said car before it ran over her." There are three assignments of error. The first and

second raise the question as to whether there was sufficient evidence of negligence to warrant the court in submitting the case to the jury, and the third alleges error in a part of the charge quoted in the assignment in which it is said there is no proof as to just exactly how the accident occurred and that the plaintiff being a child seven years old makes a difference in the proof required by the plaintiff. The third assignment may be disposed of by suggesting what is apparent from other parts of the charge and from the learned judge's language assigned as error that it was used in view of the fact that the infant plaintiff was too young to testify and give full details of the accident. We think the excerpt from the charge complained of was more injurious to the plaintiff than the defendant. There was ample evidence as to how the accident occurred and the negligence of the motorman in charge of the car, and, as will hereafter appear, the court submitted the evidence to the jury with proper instructions in view of the negligence averred in the statement.

Fifteenth street extends north and south and Tioga street crosses it at right angles. There is a street car track on Fifteenth street, and on October 4, 1911, a car running south on the track struck the plaintiff on the south crossing of Tioga street, knocked her down, and the east side front wheel severed her foot from the leg. The plaintiff had been attending school in a building on the west side of Fifteenth street and south of Tioga street. The children had been dismissed and were leaving the building and going into the street in large numbers. They went north on the west side of Fifteenth street to the south side of Tioga where some of the children turned and crossed the street, among the latter being the plaintiff accompanied by Helen Williams another girl of about the same age. When the car coming south on Fifteenth street stopped on the north side of Tioga street, the two little girls started across the street, the plaintiff behind the other girl, and when the

latter got across she looked back "to see where was Maud (the plaintiff) and the car knocked her (Maud) down." The car stopped when its front end was about six feet and the front wheels about four feet beyond the south side crossing of Tioga street. The plaintiff was back of the front wheels under the car and she was picked up and taken to a hospital.

The car which caused the plaintiff's injuries was running south on Fifteenth street. The manner in which it was run at the time of the accident and immediately before and the conduct of the motorman in operating it appears by the testimony introduced by the plaintiff. No evidence was offered by the defendant company. At least three witnesses testified that the car stopped on the north side of Tioga street before it attempted to cross Fifteenth street, and the testimony is uncontradicted. John F. Little was a passenger on the car. He testified that when the car was about to cross Tioga street an automobile or wagon coming east on that street attracted his attention and he and the motorman near whom he sat looked west on the street, when almost instantaneously he heard a grinding noise and the car stopped. He alighted and found the child under the car, the front of the car being six feet and the wheels of the car being not over four feet south of the crossing. The automobile or vehicle traveled at a slow pace and permitted the car to pass. Samuel Williams was walking west on Tioga street and stopped on the east side of Fifteenth street to let the car pass south. He testified: "Q. Did you notice the motorman? A. Yes, sir. Q. What was his position when the car crossed Tioga street? A. After the car stopped on the north side of Tioga it started again and just as it got to the middle of the street he had his head turned looking at something on the west side......Q. Then what was the next thing you saw? A. Just as the rear end of the car got about the middle of Tioga street it made a sudden stop. I

was fixing to go across and it made a sudden stop and I stepped back and saw the girl down by the wheel."

From the evidence in the case the jury was justified in finding that the motorman's negligence caused the plaintiff's injuries. The accident did not occur between streets, but at a street crossing where more than ordinary care was required of. the motorman. As his car approached Tioga street he saw, or according to Little's testimony could have seen, the children leaving the school building in great numbers, some of whom were crossing Fifteenth street south of Tioga. When he stopped on the north side of that street he also must have seen children using the crossing on the south side of the street, as Helen Williams who accompanied the plaintiff saw his car while she was crossing. With this knowledge of the use of the street and the crossing by the school children and the necessity for the exercise of more than ordinary care, the motorman started his car and instead of looking ahead of him and along the track, he immediately turned his attention westward on Tioga street and continued to look in that direction until the child was struck and fell under the front wheel on the east side of the car. When he started his car and left the north crossing, he was at least fifty or sixty feet from the south crossing and had the car under perfect control, as appears from the fact that he stopped it within six feet after it struck the child. He, therefore, had ample time to stop the car and prevent the collision if he had exercised due care by keeping a lookout in front of him. He necessarily would have seen the child and could have stopped the car before it reached the crossing. He didn't see the children or know the child had been struck until he heard "the grinding noise" of the wheel passing over its leg.

The appellant contends that the motorman's duty required him to look up and down Tioga street while he was crossing it, and that continuing to do so until the child was struck on the opposite crossing was not negli-

gence.  This duty of looking aside on Tioga street was or should have been performed as the car approached the street and after it had stopped before crossing.  The motorman saw at a glance there was nothing approaching him on Tioga street, unless it was an automobile or wagon which was under control and slowed up to let him pass.  On the other hand, he knew that there were "lots of children coming from school" in the street in front of him and that their safety and protection required him to keep his eyes on the track ahead of him. There was no difficulty in the motorman's protecting persons or vehicles approaching his car on Tioga street as well as the children whom he knew to be in front of him.  With his car under proper control, he could easily have prevented the collision with the children crossing on the south side of Tioga street if, after glancing along Tioga street, he had used his eyes and looked along the track in front of him.  .

This case must be distinguished from that class of cases where a child unexpectedly leaves a place of safety and suddenly runs in front of a moving car and is injured.  There, the motorman cannot provide against the collision, and therefore his failure to do so is not negligence.  Here, the children were passing over the crossing in full view of the motorman if he had been looking, and at the speed he was running he could have stopped the car and prevented the collision.

The single negligent act alleged in the statement as the cause of action was submitted by the learned judge after directing the attention of the jury to the testimony as follows:  "If you find under the evidence, that the accident occurred because of the fact that the motorman was not properly attending to his business, but was looking to the side instead of the front of the car, when he might have prevented the accident if he had been looking ahead, then there might be a recovery for the plaintiff in this case, but until you do find that fact from the evidence there can be no recovery, and your verdict

would be in favor of the defendant." We think there was sufficient evidence of negligence to justify the verdict and that it should not be disturbed.

Judgment affirmed.